

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARROW GEAR COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DOWNERS GROVE SANITARY DISTRICT; )<br>CHASE-BELMONT PROPERTIES, LLC; )<br>AMERICAN NATIONAL BANK AND TRUST )<br>COMPANY OF CHICAGO (n/k/a JP Morgan )<br>Chase Bank NA) AS TRUSTEE UNDER )<br>TRUST No. 30797; CITIZENS NATIONAL )<br>BANK OF DOWNERS GROVE (n/k/a U.S. )<br>BANK NATIONAL ASSOCIATION) AS )<br>TRUSTEE UNDER TRUST No. 2398; )<br>LASALLE BANK NATIONAL ASSOCIATION )<br>AS SUCCESSOR TRUSTEE UNDER TRUST )<br>AGREEMENT DATED 10/14/80 AND KNOWN )<br>AS TRUST No. B7900239830; LOVEJOY, INC.; )<br>RHI HOLDINGS, INC.; CORNING INC.; and )<br>H.W. HOLDING CO., )<br>)<br>Defendants. ) | Case No. 08 CV 4895<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This action is brought by Plaintiff Arrow Gear Company ("Arrow Gear"), alleging claims against Defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 ("CERCLA"), and the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1. Arrow Gear seeks to recover from Defendants "response costs" it has incurred and will incur in connection with contamination at the Ellsworth Industrial Park in Downers Grove, Illinois ("EIP"). Arrow Gear alleges these response costs arise from consent agreements it entered with

1

the United States Environmental Protection Agency ("USEPA") in connection with contamination at EIP. (*See* Amended Complt.)

Defendants Downers Grove Sanitary District ("DGSD"); Chase-Belmont Properties, LLC ("Chase-Belmont"); American National Bank and Trust Company of Chicago (n/k/a JP Morgan Chase Bank NA) as Trustee under Trust No. 30797; Citizens National Bank of Downers Grove (n/k/a/ U.S. Bank National Association) as Trustee under Trust No. 2398; LaSalle Bank National Association as Successor Trustee under Trust Agreement dated 10/14/80 and known as Trust No. 2398 (now known as Trust No. B7900239830); RHI Holdings, Inc. ("RHI"); and Lovejoy, Inc. ("Lovejoy") (collectively, the "moving Defendants") have a filed a "Motion to Enforce Court's Final Orders of Dismissal with Prejudice and Reassign Case Pursuant to Local Rule 40.3." (Docket No. 26).[1]

The moving Defendants seek dismissal with prejudice and contend Arrow Gear's claims in this case are barred, under principles of *res judicata*, by three orders of dismissal with prejudice entered by this Court in *Muniz v. Rexnord Corporation, et al.*, No. 04 C 2405 (*Muniz*). Arrow Gear has filed a response in opposition to the motion. In addition, Arrow Gear has filed a "Motion for Restricting Order Relating to Its Response to Defendants' So-Called Motion to Enforce." (Docket No. 39.) In its submissions, Arrow Gear asks the Court to consider settlement agreements entered into in *Muniz* and enter an order deeming the agreements and other documents restricted pursuant to Local Rule 26.2.

---

[1] To the extent it seeks reassignment, the motion is now moot in that the case was reassigned to this Court under Local Rule 40.3 on November 11, 2008. (*See* Docket No. 34.)

Given that the moving Defendants and Arrow Gear all urge the Court to consider materials outside the scope of the pleadings in this case to reach a resolution of the issues raised by the motions, the proper course is to convert the moving Defendants' motion into a motion for summary judgment and consider the parties' submitted materials. *See* Fed. R. Civ. P. 12(d) ("If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motions."); *Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996) (if the district court considers materials not included in the pleadings, then it must convert the motion to dismiss into a motion for summary judgment and give the plaintiff an opportunity to respond to materials presented by the defendant). The parties have all had a reasonable opportunity to submit pertinent material; therefore, the moving Defendants' motion is converted to a motion for summary judgment. Under the federal rules, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining such a motion, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006).[2]

---

[2]Further, the moving Defendants do not dispute the propriety of a restricting order as requested by Arrow Gear (instead, the moving Defendants dispute the relevance of the settlement agreements). Arrow Gear's Motion for Restricting Order is granted. The moving Defendants' position as to the settlement agreements will be addressed below.

## BACKGROUND

The *Muniz* case began in 2004. Several plaintiffs representing a class of homeowners living near EIP brought an action, alleging that Arrow Gear, Lovejoy, RHI and ten other parties were responsible for releasing chemicals into the ground, including trichloroethylene ("TCE") and perchloroethylene ("PCE"), contaminating the water and properties at or near EIP and causing plaintiffs injury. The *Muniz* plaintiffs asserted causes of action under CERCLA and Illinois law.

The defendants in *Muniz* (including Arrow Gear, Lovejoy and RHI) brought cross-claims against each other, as well as third-party claims against other defendants, including Chase-Belmont and DGSD. The cross and third-party defendants all alleged that other parties and third-party defendants were responsible for the contamination at EIP. Specifically, Arrow Gear filed cross and third-party complaints against various parties, including the Defendants in this case, alleging claims for contribution under CERCLA and the Illinois contribution statute. (*See* Arrow Gear's Cross and Third-Party Complaints in *Muniz*, attached to Def. Mem. at Ex. 1.) Arrow Gear alleged in *Muniz* that: (1) defendants here (and others) had released chemicals, including TCE and PCE in and around EIP and that these releases migrated and contaminated the *Muniz* plaintiffs' drinking water supply and property; (2) defendants here (and others) were responsible for the contamination; (3) Arrow Gear had entered into settlement agreements with the USEPA and Illinois Environmental Protection Agency ("IEPA"), agreeing to provide alternate water supplies to the plaintiff class and to pay for a Remedial Investigation and Feasibility Study to be conducted by USEPA at the EIP site; and (4) Arrow Gear should

4

recover from defendants here (and others) any amount for which it was found liable to plaintiffs, including the cost of hooking the plaintiff class area homes up to the municipal water supply and the response costs it had incurred and would incur in responding to the contamination in and around EIP, which it had agreed to pay in its settlements with the USEPA. (Def. Mem. at Ex. 1.)

After years of litigation, the *Muniz* class claims were settled with defendants agreeing to pay 15.75 million dollars to the plaintiff class. After settling with the *Muniz* plaintiffs, the *Muniz* defendants, cross and third-party defendants agreed to dismiss all claims against each other with prejudice and proceed to private mediation to allocate their respective shares of the 15.75 million dollar settlement paid to the plaintiff class.

On June 22, 2006, various *Muniz* defendants and third-party defendants (including Arrow Gear, Lovejoy and RHI) filed a joint agreed motion with this Court, stating that the parties had entered into a settlement agreement and, as part of the agreement, agreed to arbitrate all counterclaims, cross-claims and third-party claims between them; the motion sought dismissal with prejudice of all counterclaims, cross-claims and third-party claims between and among them. The Court granted this motion on June 28, 2006. Pursuant to the Court's dismissal order, "[a]ll counterclaims, crossclaims and third party claims between and among Defendants and Third Party Defendants . . . Arrow Gear . . . Lovejoy . . . RHI . . . [were] dismissed with prejudice." (Def. Ex. 2.)

Arrow Gear subsequently settled its contribution claims against third-party defendants DGSD and Chase-Belmont. On October 5, 2006, Arrow Gear filed a motion for good faith findings of settlement and dismissal of its third-party claims against DGSD. The Court granted this motion in an order dated October 10, 2006. The Court's dismissal order as to DGSD states:

> a. The Court finds that the two settlements between Defendants/Third-Party Plaintiffs . . . Arrow Gear . . . on the one hand, and Third-Party Defendants [DGSD] on the other hand, are given in "good faith" under Section 2(c) of the Joint Tortfeasor Contribution Act, 740 ILCS 100/2(c);
>
> b. Third-Party [Defendant DGSD] . . . is] hereby discharged from all liability for any contribution to any other tortfeasor relating to or arising from the claims made in this action pursuant to Section 2(d) of the Joint Tortfeasor Contribution Act, 740 ILCS 100/2(d);
>
> c. Third-Party [Defendant DGSD] . . . is] hereby discharged from all liability for any contribution under CERCLA . . . to any other party relating to or arising from the claims made in this action;
>
> d. Third-Party [Defendant DGSD . . . is] hereby dismissed from this action with prejudice.

(Def. Ex. 3.)

On October 20, 2006, Arrow Gear likewise filed a motion for good faith findings of settlement and dismissal of its third-party claims against Chase-Belmont. The Court granted this motion in an order dated October 28, 2006. The Court found that the settlement between Arrow Gear and Chase-Belmont was given in good faith and dismissed Arrow Gear's third-party CERCLA and Illinois contribution claims against Chase-Belmont. The Court's dismissal order as to Chase-Belmont states:

b. Third-Party [Defendant Chase-Belmont . . . is] discharged from all
   liability for any contribution to any tortfeasor relating to or arising from
   the claims of Plaintiffs made in this action pursuant to Section 2(d) of the
   Joint Tortfeasor Contribution Act . . .;

   c. Third-Party [Defendant Chase-Belmont . . . is] discharged from all
   liability for contribution under CERCLA . . . to any other party relating to
   or arising from the claims of Plaintiffs made in this action;

   d. Third-Party [Defendant Chase-Belmont . . . is] hereby dismissed from
   this action with prejudice, subject to the terms of the settlement
   agreement.

(Def. Ex. 4.)

## ANALYSIS

The moving Defendants contend the Court's three dismissal orders in *Muniz* bar Arrow Gear's action in this case. They rely on *NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.*, 105 F.3d 72, 78 (2d Cir. 1997), for the proposition that a stipulated dismissal with prejudice constitutes a final adjudication on the merits for purposes of *res judicata*.

Under the doctrine of *res judicata*, a decision in an earlier action constitutes a complete bar to a later action if: "(1) the parties to the later suit are the same as or in privity with those in the earlier suit, (2) the later suit alleges the same cause of action as the earlier suit, and (3) a court of competent jurisdiction entered a valid final judgment on the merits in the earlier suit." *Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 779 (1986) (*Cannon*). Further, in this circuit, the scope of a "cause of action" for purposes of *res judicata* is determined by the "same transaction" test. *Carr Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) (*Carr Carriers*). "Under this test, a cause of action consists of a 'single core of operative facts which give rise to a remedy.' This

'same transaction' test is decidedly fact-oriented. Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Lim v. Central DuPage Hosp.*, 972 F.2d 758, 763 (7th Cir. 1992) (citing *Carr Carriers*, 789 F.2d at 593).

The moving Defendants contend these well-established rules bar this action against them. *Cannon* applies because Arrow Gear "alleges the same causes of action – CERCLA and Illinois contribution claims – and seeks the same relief – recovery of its response costs arising out of the contamination at [EIP] – against the same parties which it previously and voluntarily dismissed with prejudice in *Muniz*: Arrow Gear claims, as it did in *Muniz*, that Defendants should pay Arrow Gear: (1) the costs of hooking the plaintiff class up to the municipal water supply and (2) the response costs Arrow Gear has incurred and will incur in responding to the contamination in and around [EIP], including costs which it has agreed to pay under settlement agreements with USEPA." (Def. Mem. at 10.) Further, even if Arrow Gear asserted new theories of relief, its claims are barred under the same transaction test because "Arrow Gear's CERCLA and Illinois contribution claims here arise from the same core of operative facts at issue in *Muniz*: (1) the contamination of [EIP] and the resulting contamination of the *Muniz* plaintiff class' water supply and (2) the response costs of hooking the *Muniz* plaintiff class to the Downers Grove municipal water supply and addressing the contamination as required by the USEPA and Illinois Environmental Protection Agency." (Def. Mem. at 11.)

Arrow Gear disputes that its claims are barred, relying on Illinois cases applying a narrower definition of a "cause of action" for purposes of determining *res judicata* than

8

the same transaction test utilized in the Seventh Circuit.[3] However, as the Seventh Circuit has made clear, "the federal rule of *res judicata*" applies where the prior litigation was brought in federal court, and the federal rule applies a broader definition of a cause of action than used by some Illinois courts. As stated above, the federal rule bars all claims arising out of the "same transaction" as an earlier suit. *In the Matter of Energy Cooperative, Inc.*, 814 F.2d 1226, 1230-31 (7th Cir 1987) (citing *Carr Carriers*, 789 F.2d at 593). Courts in this circuit have applied the "same transaction" test to environmental claims. *See In re Nat'l Indus. Chem. Co.*, 237 B.R. 437 (N.D. Ill. 1999); *Detrex Corp. v. Amcast Indus. Corp.*, 897 F. Supp. 386 (N.D. Ind. 1995).

Accordingly, the federal "same transaction" test applies here. Under this test, Arrow Gear's claims are barred. As shown by the moving Defendants, the allegations of Arrow Gear's Amended Complaint arise from the "same transaction" as *Muniz*.

Arrow Gear also argues that the *Muniz* dismissal orders do not bar this action because this action "arises from the [USEPA's] administrative proceedings relating to alleged contamination at [EIP]," and the parties' settlement agreements in *Muniz* "expressly preserved" such claims.

To support this argument, Arrow Gear has submitted the settlement agreements it entered into in *Muniz* with Lovejoy, RHI, DGSD and Chase-Belmont. (*See* Arrow Gear's Response Applicable to RHI and Lovejoy, Ex I; Arrow Gear's Response

---

[3]Among other cases, Arrow Gear cites *Iovinelli v. Pritchett*, No. 06 CV 6464, 2008 WL 2705446, *9 (N.D. Ill. July 9, 2008), for the proposition that the pertinent inquiry in determining *res judicata* is whether the relief sought and the type of evidence at issue in the two cases are the same. Arrow Gear argues that the relief and evidence here are different than in *Muniz*.

9

Applicable to DGSD and Chase-Belmont, Ex. 1.) Specifically, Arrow Gear relies on the following language in the settlement agreements. The settlement agreement entered into by Lovejoy, RHI and Arrow Gear contains the following language:

> (b) It is further agreed that this Settlement Agreement does not resolve, and shall not be construed to settle, release, or discharge, any claims or disputes (including contribution claims) involving the members of the *Muniz* Arbitration Group **in any litigation or administrative proceeding other than *Muniz* . . ., including . . . any other claims or disputes that have arisen or may arise from litigation or administrative or arbitration proceedings relating to the alleged contamination at and near to the Ellsworth Industrial Park,** including claims relating to the cost of proving public water to homes in the *Muniz* class area (except to the limited extent that those costs were addressed in the *Muniz* settlement payment), the cost of any investigation in the Ellsworth Industrial Park, and the response cost of damage claims of any government or governmental agency.

(Arrow Gear Response Applicable to RHI and Lovejoy, Ex. 1, p. 12.) (Emphasis added.)

The settlement and release agreement entered into by DGSD and Arrow Gear contains the following language:

> **These releases** do not release any claims other than the specified claims and **do not release claims that may arise in other litigation or in other contexts related to alleged contamination at the Ellsworth Industrial Park. . . . Claims that are not being released include, but are not limited to, claims . . . in administrative proceedings** arising from the alleged contamination at and near to the Ellsworth Industrial Park.

(Arrow Gear Response Applicable to DGSD and Chase-Belmont, Ex. 1, p. 5.) (Emphasis added.)

The settlement and release agreement entered into by Chase-Belmont contains virtually identical language to the language quoted from the DGSD settlement agreement and release. (*See* Arrow Gear Response Applicable to DGSD and Chase-Belmont, Ex. 2, p. 7.)

10

Relying on *Norfolk Southern v. Chevron USA*, 371 F.3d 1285 (11th Cir. 2004) (*Norfolk Southern*), Arrow Gear contends these provisions in the parties' settlement agreements govern the scope of the dismissal in *Muniz*. In *Norfolk Southern*, the court recognized that dismissals with prejudice are accorded the same *res judicata* effect as any other judgment; however, where the parties have consented to a dismissal based on a settlement agreement, the principles of *res judicata* apply in a modified form to the matters specified in the settlement agreement. The scope of what is barred is not necessarily determined – as under a normal application of *res judicata* principles – by the claims that were alleged or could have been alleged in the original proceeding.

Arrow Gear contends the quoted language from the various settlement agreements shows that claims arising from administrative proceedings were not released and settled; therefore, this lawsuit, seeking to recover response costs arising from USEPA administrative proceedings, is not barred by the Court's dismissal orders.

The moving Defendants dispute Arrow Gear's position. They argue that when a case is dismissed with prejudice, as was *Muniz*, no claims are preserved. Further, a court lacks jurisdiction to enforce the parties' competing views of their settlement agreement after dismissal unless the court's dismissal order incorporates the terms of the agreement. If the dismissal order does not incorporate the terms of the settlement, the settlement agreement is enforced like any other contract. *See* Def. Rep. at 9-10. Defendants rely on *Lynch v. Samatamason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) (*Lynch*) ("A settlement agreement, unless it is embodied in a consent decree or some other judicial order or unless jurisdiction to enforce the agreement is retained (meaning that the suit has not

11

been dismissed with prejudice), is enforced just like any other contract"); and *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381-82 (1994) (*Kokkonen*) (court lacked inherent power to enforce a settlement agreement where the parties executed a stipulation and order of dismissal with prejudice which did not refer to the settlement agreement or reserve district court jurisdiction to enforce it).

The moving Defendants argue the settlement agreements should not be considered because the Court's dismissal orders with prejudice did not "expressly preserve" any claims and did not incorporate the parties' obligations under the settlement agreements. The moving Defendants also argue that *Norfolk Southern* does not apply because it "involved a consent judgment." (Def. Rep. at 10.)

Finally, the moving Defendants contend that even if the settlement agreements are considered, the agreements show that the parties intended to settle all claims arising in the *Muniz* litigation, not just the claims of the *Muniz* plaintiff class. The moving Defendants assert that although Arrow Gear's present complaint "adds more detail regarding its beliefs as to how the contamination at [EIP] occurred and more details regarding the settlements [Arrow Gear] entered into with the USEPA, Arrow Gear asserts the same claims here that it asserted in *Muniz*: that defendants should pay Arrow Gear (1) the costs of hooking the plaintiff class up to the municipal water supply, and (2) the response costs Arrow Gear has incurred and will incur in responding to the contamination in and around [EIP], including costs which it agreed to pay in its settlement agreements with USEPA." (Def. Mem. at 4-5.) Accordingly, the moving Defendants contend that Arrow Gear's claims are barred even under the settlement

agreements.

The moving Defendants' cases support the proposition that the district court does not retain jurisdiction to enforce a settlement agreement in a case dismissed with prejudice unless the settlement agreement is embodied in a consent decree or some other judicial order. *See Kokkonen*, 511 U.S. at 380-81; *Lynch*, 279 F.3d at 489.

In *Norfolk Southern*, the court considered the terms of a settlement agreement in such a case for purposes of determining *res judicata*.[4] In that case, the parties entered into a settlement agreement; and the district court entered a judgment of dismissal with prejudice based upon the parties' joint stipulation, which stated, "It is hereby agreed by and between all parties that the above entitled cause has been compromised and settled and that this cause is dismissed with prejudice under Rule 41 of the Federal Rules of Civil Procedure. . . ." It does not appear that the terms of the settlement agreement were incorporated into the district court's dismissal order.

*Lynch*, however, is controlling in this circuit and bars the Court from enforcing the terms of the *Muniz* settlement agreements. *Lynch* states clearly: "A settlement agreement, unless it is embodied in a consent decree or some other judicial order or unless jurisdiction to enforce the agreement is retained (meaning that the suit has not been dismissed with prejudice), is enforced just like any other contract." *Lynch*, 279 F.3d at 489.

---

[4] *Lynch* and *Kokkonen* did not specifically address the propriety of considering a settlement agreement for this purpose.

Furthermore, even assuming *Norfolk Southern* applies in this circuit for purposes of determining *res judicata* and the settlement agreements are considered, the agreements show that the parties intended to settle and preclude from future litigation all claims asserted or that could have been asserted in the *Muniz* litigation, not just the claims of the *Muniz* plaintiff class. Specifically, the parties' settlement agreements all contain broad language settling and precluding all claims, including cross and third-party claims, that were raised and/or could have been raised in *Muniz*.

The settlement agreement of Arrow Gear, Lovejoy and RHI resolved all "Claims" as defined in a "Settlement and Agreement to Arbitrate," which clearly states:

> 3. **This Agreement applies to all Claims or arguments now in existence or that may arise in the future and are asserted or could have been asserted in the Case** so long as such claims arise out of the transactions or occurrences that are the subject matter of plaintiffs', **or any Party's claims.**

(Ex. A to Settlement Agreement, attached to Arrow Gear's Response pertaining to Lovejoy and RHI at Ex. 1.) (Emphasis added). "Claims" are broadly defined to include:

> [C]ross-claims, counterclaims, and/or third party claims against and among other Parties sounding in a variety of theories of liability in order to resolve their respective fair shares of liability (if any) to the purported class of plaintiffs . . . **and/or to resolve their direct liability (if any) against and among the other Parties** (hereinafter the "Claims")[.]

(*Id.*, at pp. 2-3.) (Emphasis added).

Arrow Gear's settlement agreement with DGSD, likewise, expressly released DGSD from all claims which were or could have been raised in *Muniz*. The settlement agreement releases DGSD from liability for:

14

> **all claims**, demands, obligations, controversies, suits, cross-claims, torts, costs, losses, attorneys' fees, damages, trespass or nuisance annoyance damages, response costs, liabilities, expenses, and causes of action of any kind whatsoever in law or in equity . . . whether or not known now, anticipated or suspected, **which were or could have been claimed in a Third-Party Complaint in the *Muniz* action sounding in contribution under any State or Federal law or legal precedent of any kind.**

(Arrow Gear's Response pertaining to DGSD and Chase-Belmont, Ex. 1, p. 4.) (Emphasis added.) The settlement agreement with Chase-Belmont contains identical broad, release language. (Arrow Gear's Response pertaining to DGSD Chase-Belmont, Ex. 2, p. 4.)

Although Arrow Gear points to language in the settlement agreements set out above purporting to allow future litigation of claims arising out of "administrative proceedings," this carved-out exception in the settlement agreements on which Arrow Gear relies pertains to claims *other* than those in *Muniz*. *See* Arrow Gear Response Applicable to RHI and Lovejoy, Ex. 1 at p. 12 ("[T]his Settlement Agreement does not resolve, and shall not be construed to settle . . . any claims . . . in any litigation or administrative proceeding **other than *Muniz***"); Arrow Gear Response Applicable to DGSD and Chase-Belmont, Ex. 1, p. 5 ("These releases . . . do not release claims that may arise **in other litigation or in other contexts**.") (Emphasis added.) As stated above, the settlement agreements clearly state that all claims asserted or that could have been asserted in *Muniz* were settled and released.

In that Arrow Gear seeks to recover, in this action, response costs arising out of two settlement agreements it entered into with the USEPA, and Arrow Gear sought to recover such response costs in its cross and third-party complaints in *Muniz*, under the

broad language contained in the parties' settlement agreements, Arrow Gear's claims in this action are barred by the Court's prior dismissal orders in *Muniz*.

## CONCLUSION

For the reasons stated above, Arrow Gear's Motion for Restricting Order (Docket No. 39) and the moving Defendants' "Motion to Enforce Court's Final Orders of Dismissal with Prejudice" (Docket No. 26) are both granted. The moving Defendants are entitled to summary judgment because the claims asserted against them in this action are barred by *res judicata*. Accordingly, summary judgment is hereby entered in this case in favor of the moving Defendants and against Arrow Gear.

Date: January 29, 2009

JOHN W. DARRAH
United States District Court Judge